# EXHIBIT A

Case 2:23-cv-00927-CAS-AS Document 1-2 Filed 02/07/23 Page 2 of 15 Page ID #:25
Electronically FILED by Superior Court of California, County of Los Angeles on 08/08/2022 01:47 PM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Horan,Deputy Clerk
22TRCV00675
Assigned for all purposes to: Torrance Courthouse, Judicial Officer: Gary Tanaka

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
Tionna G. Dolin (SBN 299010)
Sanam Vaziri (SBN 177384)
(emailservices@slpattorney.com)
1888 Century Park East, 19th Floor
Los Angeles, CA 90067
Telephone: (310) 929-4900
Facsimile: (310) 943-3838
tdolin@slpattorney.com
svaziri@slpattorney.com

Attorneys for Plaintiff
LORNE CURRIE

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| LORNE CURRIE, | Case No.: 22TRCV00675 |
|---|---|
| Plaintiff, | Hon.<br>Dept. |
| vs. | **COMPLAINT FOR VIOLATION OF STATUTORY OBLIGATIONS** |
| FCA US, LLC.; SCOTT ROBINSON CHRYSLER DODGE JEEP RAM; and DOES 1 through 10, inclusive, | |
| Defendants. | JURY TRIAL DEMANDED |

PAGE 1
**COMPLAINT; JURY TRIAL DEMANDED**

Plaintiff alleges as follows:

## PARTIES

1. As used in this Complaint, the word "Plaintiff" shall refer to LORNE CURRIE.

2. Plaintiff is a resident of California.

3. As used in this Complaint, the word "Defendants" shall refer to all Defendants named in this Complaint.

4. Defendant FCA US, LLC. ("Defendant FCA") is a corporation organized and in existence under the laws of the State of Delaware and registered with the California Department of Corporations to conduct business in California. At all times relevant herein, Defendant was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components in Los Angeles County, California.

5. Defendant SCOTT ROBINSON CHRYSLER DODGE JEEP RAM; ("ROBINSON") is an unknown business entity organized and in existence under the laws of the State of California. At all times relevant herein, Defendant ROBINSON was engaged in the business of selling automobiles and automobile components, and servicing and repairing automobiles in Los Angeles County.

6. Plaintiff is ignorant of the true names and capacities of the Defendants sued under the fictitious names DOES 1 to 10. They are sued pursuant to Code of Civil Procedure section 474. When Plaintiff becomes aware of the true names and capacities of the Defendants sued as DOES 1 to 10, Plaintiff will amend this Complaint to state their true names and capacities.

## TOLLING OF THE STATUTES OF LIMITATION

7. To the extent there are any statutes of limitation applicable to any of Plaintiff's claims- the running of the limitation periods to any such claims have been tolled by, inter alia, the following doctrines or rules: equitable tolling, the discovery rule, the fraudulent concealment rules, equitable estoppel, the repair rule, and/or class action tolling (*e.g., the American Pipe rule*).

8. Plaintiff discovered Defendant's wrongful conduct alleged herein shortly before filing this action as the Vehicle continued to exhibit symptoms of defects following FCA's unsuccessful repair

attempts to repair them. However, FCA failed to provide restitution pursuant to the Song-Beverly Consumer Warranty Act.

9. By filing this Complaint, Plaintiff hereby revokes acceptance of the Subject Vehicle yet again.

**FACTUAL BACKGROUND**

10. On or about June 4, 2016, Plaintiff's entered into a warranty contract with Defendant FCA regarding a 2016 Jeep Cherokee vehicle identification number 1C4PJLAB6GW323909 (hereafter "Vehicle"), which was manufactured and or distributed by Defendant FCA.

11. The warranty contract contained various warranties, including but not limited to the bumper-bumper warranty, powertrain warranty, emission warranty, etc. A true and correct copy of the warranty contract is attached hereto as **Exhibit A**. The terms of the express warranty are described in **Exhibit A** and are incorporated herein.

12. Pursuant to the Song-Beverly Consumer Warranty Act (the "Act") Civil Code sections 1790 et seq. the Subject Vehicle constitutes "consumer goods" used primarily for family or household purposes, and Plaintiff has used the vehicle primarily for those purposes. Plaintiff is a "buyer" of consumer goods under the Act. Defendant FCA is a "manufacturer" and/or "distributor" under the Act.

13. Plaintiff justifiably revokes acceptance of the Subject Vehicle under Civil Code, section 1794, et seq. by filing this Complaint and/or did so prior to filing the instant Complaint.

14. These causes of action arise out of the warranty obligations of FCA in connection with a motor vehicle for which FCA issued a written warranty.

15. Defects and nonconformities to warranty manifested themselves within the applicable express warranty period, including but not limited to, transmission defect; engine defect; electrical defect;; among other defects and non-conformities.

16. Said defects/nonconformities substantially impair the use, value, or safety of the Vehicle.

17. Plaintiff purchased the Subject Vehicle as manufactured with FCA's defective 9-speed transmission.

COMPLAINT; JURY TRIAL DEMANDED

18. Plaintiff is informed, believes, and thereon alleges that FCA knew since prior to Plaintiff purchasing the Subject Vehicle, that the 2016 Jeep Cherokee vehicles equipped with a 9-speed transmission are defective, including Plaintiff's 2016 Jeep Cherokee, contained one or more defect(s) to the transmission which may result in stalling, shutting off, and/or loss of power, (the "Stalling Defect").

19. Thus, the Stalling Defect is a safety concern because it severely affects the driver's ability to control the car's speed, acceleration, and deceleration. For example, these conditions make it difficult to safely merge into traffic or may cause a sudden loss of power while in motion. Even more troubling, the Stalling Defect can cause the vehicle to fail without warning, while the Vehicle is moving at highway speeds.

20. Plaintiff is informed, believes, and thereon alleges that prior to Plaintiff acquiring the Vehicle, FCA was well aware and knew that the transmission in the Vehicle was defective but failed to disclose this fact to Plaintiff at the time of sale and thereafter.

21. Plaintiff is informed, believes, and thereon alleges that FCA acquired its knowledge of the Stalling Defect prior to Plaintiff acquiring the Vehicle, through sources not available to consumers such as Plaintiff, including but not limited to pre-production and post-production testing data; early consumer complaints about the Stalling Defect made directly to FCA and its network of dealers; aggregate warranty data compiled from FCA's network of dealers; testing conducted by FCA in response to these complaints; as well as warranty repair and part replacements data received by FCA from FCA's network of dealers, amongst other sources of internal information.

22. Plaintiff is informed, believes, and thereon alleges that while FCA knew about the Stalling Defect, and its safety risks since prior to Plaintiff purchasing the Subject Vehicle, FCA nevertheless concealed and failed to disclose the defective nature of the Vehicle and its Stalling Defect to its sales representatives and Plaintiff at the time of sale and thereafter. FCA omitted mention of the Stalling Defect to its consumers.

23. Plaintiff is a reasonable consumer who interacted with sales representatives, considered FCA's advertisement, and/or other marketing materials concerning the FCA Vehicles prior to

PAGE 4
COMPLAINT; JURY TRIAL DEMANDED

purchasing the Subject Vehicle. Had FCA revealed the Stalling Defect, Plaintiff would have been aware of it and would not have purchased the Subject Vehicle.

### FCA Had Exclusive Knowledge of the Stalling Defect

24. FCA had superior and exclusive knowledge of the Stalling Defect and knew or should have known that the defect was not known to or reasonably discoverable by Plaintiff and before she purchased or leased the Subject Vehicle.

25. Defendant knew or should have known, based on FCA's routine monitoring of complaints, that the 2016 Jeep Cherokee vehicles have a dangerous defect that adversely affects their drivability. Additionally, FCA knew or should have known about the Stalling Defect through sources not available to consumers, including FCA's own aggregate pre-market data and other aggregate post-market data from FCA authorized dealers.

26. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had Plaintiff known of the Stalling Defect, given the unsafe nature of the Stalling Defect. Furthermore, Plaintiff unknowingly exposed herself to the risk of accident, injury, and/or liability to others as a result of the nature or the Stalling Defect which can lead to loss of power while driving at highway speeds, stalling, loss of control, and other impairments to driveability. Plaintiff is a reasonable consumer who expected the Subject Vehicle to be safe and free of defects, and that FCA would not sell or lease vehicles with known safety-related defects, such as the Stalling Defect, and would disclose any such defects to its consumers when it learns of them.

27. While it has been fully aware of the Stalling Defect, FCA actively concealed the existence and nature of the alleged defect from Plaintiff at the time of purchase, repair, and thereafter.

28. FCA was inundated with complaints regarding the Stalling Defect but rather than repair the problem under warranty, FCA dealers either inform consumers that their vehicles are functioning properly or conduct repairs that merely mask the defect.

29. On or about May 11, 2016, FCA issued TSB 18-057-16 to address customer concerns regarding illumination of the malfunction indicator lamp ("MIL"). The TSB calls for dealers to

reprogram the PCM with the latest available software. This TSB was revised on June 17, 2016, by TSB 18-057-16 REV.A to address the same issue.

30. In or around August 2017, FCA issued Safety Recall T23 to reprogram the PCM with new software to cure a safety-related defect with the EGR valve.

31. The defect could cause the EGR valve to be operating with an aggressive seating velocity, which may damage the EGR valve.

32. The Stalling Defect, which may result in vehicles shutting off, stalling without warning, loss of engine timing, loss of crankshaft position synchronization, and/or loss of power, was not cured by TSB 18-057-16 REV. A and/or Safety Recall T23.

33. On January 11, 2018, FCA released two Safety Recalls to resolve the stalling issue experienced by customers, Safety Recall U01 / NHTSA 18V-049 and Safety Recall U02 / NHTSA 18V048.

34. Safety Recall U01 / NHTSA 18V-049 was issued to address customer concerns regarding an engine stall without prior warning. The Recall states that, "[i]n the majority of cases the stalling occurs at low speed, while decelerating, while at idle or while negotiating a turn. Engine stalling results in a loss of motive power, which can cause vehicle crash without prior warning." This Recall is FCA's continued attempt to address ongoing stalling issues with repackaged T23 software updates.

35. Safety Recall U02 / NHTSA 18V-049 was issued to address customer concerns regarding an engine stall and/or a potential engine compartment fire. The Recall states that, '[e]ither of these conditions could increase the likelihood of occupant injury, and an engine stall can cause a vehicle crash without prior warning." This Recall is also another repackaged version of the existing T23 software update.

36. Neither Recalls, nor the T23 software update, have eliminated the Stalling Defect.

37. FCA admits in Safety Recall U01 that, at best, the Recall simply provides software that makes vehicles "less susceptible" to a loss of engine timing (crankshaft position synchronization).

38. FCA has still not modified any of the defective components that cause the symptoms associated with the Stalling Defect.

39. Under the Song-Beverly Act, Defendant FCA had an affirmative duty to promptly offer to repurchase or replace the Subject Vehicle at the time if failed to conform the Subject Vehicle to the terms of the express warranty after a reasonable number of repair attempts.[1]

40. Defendant FCA has failed to either promptly replace the Subject Vehicle or to promptly make restitution in accordance with the Song-Beverly Act.

41. Under the Act, Plaintiff is entitled to reimbursement of the price paid for the vehicle less that amount directly attributable to use by the Plaintiff prior to the first presentation to an authorized repair facility for a nonconformity.

42. Plaintiff is entitled to replacement or reimbursement pursuant to Civil Code, section 1794, et seq. Plaintiff is to rescission of the contract pursuant to Civil Code, section 1794, et seq. and Commercial Code, section 2711.

43. Plaintiff is entitled to recover any "cover" damages under Commercial Code, sections 2711, 2712, and Civil Code, section 1794, et seq.

44. Plaintiff is entitled to recover all incidental and consequential damages pursuant to 1794 et seq. and Commercial Code, sections 2711, 2712, and 2713 et seq.

45. Plaintiff suffered damages in a sum to be proven at trial in an amount that is not less than $25,001.00

46. Plaintiff is entitled to all incidental, consequential, and general damages resulting from Defendants' failure to comply with its obligations under the Song-Beverly Act.

---

[1] "A manufacturer's duty to repurchase a vehicle does not depend on a consumer's request, but instead arises as soon as the manufacturer fails to comply with the warranty within a reasonable time. (*Krotin v. Porsche Cars North America, Inc.* (1995) 38 Cal.App.4th 294, 301-302, 45 Cal.Rptr.2d 10.) Chrysler performed the bridge operation on Santana's vehicle in August 2014 with 30,262 miles on the odometer—within the three-year, 36,000 mile warranty. The internal e-mails demonstrating Chrysler's awareness of the safety risks inherent in the bridge operation were sent in September 2013, and thus Chrysler was well aware of the problem when it performed the bridge operation on Santana's vehicle. Thus, Chrysler's duty to repurchase or provide restitution arose prior to the expiration of the three-year, 36,000 mile warranty. Moreover, although we do not have the actual five-year, 100,000 mile power train warranty in our record, Santana's expert testified that the no-start/stalling issues Santana experienced were within the scope of the power train warranty, which was still active when Santana requested repurchase in approximately January 2016, at 44,467 miles. Thus the premise of Chrysler's argument—that Santana's request for repurchase was outside the relevant warranty—is not only irrelevant, but wrong." *Santana v. FCA US, LLC,* 56 Cal. App. 5th 334, 270 Cal. Rptr. 3d 335 (2020).

# FIRST CAUSE OF ACTION

## BY PLAINTIFF AGAINST DEFENDANT FCA

## VIOLATION OF SUBDIVISION (D) OF CIVIL CODE SECTION 1793.2

47. Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

48. Defendant FCA and its representatives in this state have been unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of opportunities. Despite this fact, Defendant FCA failed to promptly replace the Vehicle or make restitution to Plaintiff as required by Civil Code section 1793.2, subdivision (d) and Civil Code section 1793.1, subdivision (a)(2).

49. Plaintiff has been damaged by Defendant FCA's failure to comply with its obligations pursuant to Civil Code section 1793.2, subdivision (d) and Civil Code section 1793.1, subdivision (a)(2), and therefore brings this cause of action pursuant to Civil Code section 1794.

50. Defendant FCA's failure to comply with its obligations under Civil Code section 1793.2, subdivision (d) was willful, in that Defendant FCA and its representative were aware that they were unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of repair attempts, yet Defendant FCA failed and refused to promptly replace the Vehicle or make restitution. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (c).

51. Defendant FCA does not maintain a qualified third-party dispute resolution process which substantially complies with Civil Code section 1793.22. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (e).

52. Plaintiff seeks civil penalties pursuant to section 1794, subdivisions (c), and (e) in the alternative and does not seek to cumulate civil penalties, as provided in Civil Code section 1794, subdivision (f).

# SECOND CAUSE OF ACTION
# BY PLAINTIFF AGAINST DEFENDANT FCA
# VIOLATION OF SUBDIVISION (B) OF CIVIL CODE SECTION 1793.2

53. Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

54. Although Plaintiff presented the Vehicle to Defendant FCA's representative in this state, Defendant FCA and its representative failed to commence the service or repairs within a reasonable time and failed to service or repair the Vehicle so as to conform to the applicable warranties within 30 days, in violation of Civil Code section 1793.2, subdivision (b). Plaintiff did not extend the time for completion of repairs beyond the 30-day requirement.

55. Plaintiff has been damaged by Defendant FCA's failure to comply with its obligations pursuant to Civil Code section 1793.2(b), and therefore brings this Cause of Action pursuant to Civil Code section 1794.

56. Plaintiff has rightfully rejected and/or justifiably revoked acceptance of the Vehicle and have exercised a right to cancel the purchase. By serving this Complaint, Plaintiff does so again. Accordingly, Plaintiff seeks the remedies provided in California Civil Code section 1794(b)(1), including the entire contract price. In the alternative, Plaintiff seeks the remedies set forth in California Civil Code section 1794(b)(2), including the diminution in value of the Vehicle resulting from its defects. Plaintiff believes that, at the present time, the Vehicle's value is de minimis.

57. Defendant FCA's failure to comply with its obligations under Civil Code section 1793.2(b) was willful, in that Defendant GM and its representative were aware that they were obligated to service or repair the Vehicle to conform to the applicable express warranties within 30 days, yet they failed to do so. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794(c).

## THIRD CAUSE OF ACTION

## BY PLAINTIFF AGAINST DEFENDANT FCA

## VIOLATION OF SUBDIVISION (A)(3) OF CIVIL CODE SECTION 1793.2

58. Plaintiff incorporates by reference the allegations contained in paragraphs set forth above.

59. In violation of Civil Code section 1793.2, subdivision (a)(3), Defendant FCA failed to make available to its authorized service and repair facilities sufficient service literature and replacement parts to effect repairs during the express warranty period. Plaintiff has been damaged by Defendant FCA's failure to comply with its obligations pursuant to Civil Code section 1793.2(a)(3), and therefore brings this Cause of Action pursuant to Civil Code section 1794.

60. Defendant FCA's failure to comply with its obligations under Civil Code section 1793.2, subdivision (a)(3) was willful, in that Defendant FCA knew of its obligation to provide literature and replacement parts sufficient to allow its repair facilities to effect repairs during the warranty period, yet Defendant FCA failed to take any action to correct its failure to comply with the law. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages, pursuant to Civil Code section 1794(c).

## FOURTH CAUSE OF ACTION

## BY PLAINTIFF AGAINST DEFENDANT FCA

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

## CODE, § 1791.1; § 1794; § 1795.5)

61. Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

62. Pursuant to Civil Code section 1792, the sale of the Vehicle was accompanied by Defendant FCA's implied warranty of merchantability. Pursuant to Civil Code section 1791.1, the duration of the implied warranty is coextensive in duration with the duration of the express written warranty provided by Defendant FCA.

63.     Pursuant to Civil Code section 179s1.1 (a), the implied warranty of merchantability means and includes that the Vehicle will comply with each of the following requirements: (1) The Vehicle will pass without objection in the trade under the contract description; (2) The Vehicle is fit for the ordinary purposes for which such goods are used; (3) The Vehicle is adequately contained, packaged, and labelled; (4) The Vehicle will conform to the promises or affirmations of fact made on the container or label.

64.     At the time of sale, the subject vehicle contained one or more latent defect(s) set forth above. The existence of the said defect(s) constitutes a breach of the implied warranty because the Vehicle (1) does not pass without objection in the trade under the contract description, (2) is not fit for the ordinary purposes for which such goods are used, (3) is not adequately contained, packaged, and labelled, and (4) does not conform to the promises or affirmations of fact made on the container or label.

65.     Plaintiffs have been damaged by Defendant FCA's failure to comply with its obligations under the implied warranty, and therefore brings this Cause of Action pursuant to Civil Code section 1794.

## FIFTH CAUSE OF ACTION
## BY PLAINTIFF AGAINST DEFENDANT FCA
### (Fraudulent Inducement - Concealment)

66.     Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

67.     FCA committed fraud by allowing the Subject Vehicle to be sold to Plaintiff without disclosing that the Subject Vehicle and its transmission were defective which can cause loss of engine timing and result in shutting off or stalling without warning. It can also result in a total loss of power, including power steering, which can prevent acceleration, deceleration, and steering and significantly impair driver control. Faults from the 9-speed transmission can also cause the Subject Vehicle to lose power.

68. Indeed, Plaintiff alleges that prior to the sale of the Subject Vehicle to Plaintiff, FCA knew that the Vehicle and its transmission suffered from an inherent defect, was defective, would fail prematurely, and was not suitable for its intended use.

69. FCA was under a duty to Plaintiff to disclose the defective nature of the Vehicle and its transmission, its safety consequences and/or the associated repair costs because:

    a. Plaintiff is informed, believes, and thereon alleges that FCA acquired its knowledge of the Stalling Defect and its potential consequences prior to Plaintiff acquiring the Vehicle, through sources not available to consumers such as Plaintiffs, including but not limited to pre-production testing data, early consumer complaints about the Stalling Defect made directly to FCA and its network of dealers, aggregate warranty data compiled from FCA's network of dealers, testing conducted by FCA in response to these complaints, as well as warranty repair and part replacements data received by FCA from FCA's network of dealers, amongst other sources of internal information;

    b. FCA was in a superior position from various internal sources to know (or should have known) the true state of facts about the material defects contained in vehicles equipped with 9-speed transmission; and

    c. Plaintiff could not reasonably have been expected to learn or discover of the Vehicle's Stalling Defect and its potential consequences until well after Plaintiff purchased the Vehicle.

70. In failing to disclose the defects in the Vehicle's transmission, FCA has knowingly and intentionally concealed material facts and breached its duty not to do so.

71. The facts concealed or not disclosed by FCA to Plaintiff is material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Vehicle. Had Plaintiff known that the Vehicle and its transmission were defective at the time of sale, they would not have purchased the Vehicle.

72. Plaintiff is a reasonable consumer who interacted with FCA's sales representatives and reviewed materials disseminated by FCA concerning FCA Vehicles prior to purchasing the Subject Vehicle. Had Defendant disclosed the Stalling Defect, a safety hazard, to its sales representatives and/or the consumer public, Plaintiff would have been aware of it and would not have purchased the Subject Vehicle.

73. Plaintiff was harmed by purchasing a vehicle that Plaintiff would not have leased and/or purchased had Plaintiff known the true facts about the Stalling Defect.

74. Furthermore, Plaintiff unknowingly exposed herself to the risk of liability, accident and injury as a result of Defendant's fraudulent concealment of the Stalling Defect.

## SIXTH CAUSE OF ACTION
## BY PLAINTIFF AGAINST DEFENDANT ROBINSON
## NEGLIGENT REPAIR

75. Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

76. Plaintiff delivered the Subject Vehicle to Defendant ROBINSON for substantial repair on at least one occasion.

77. Defendant ROBINSON owed a duty to Plaintiff to use ordinary care and skill in storage, preparation and repair of the Subject Vehicle in accordance with industry standards.

78. Defendant ROBINSON breached its duty to Plaintiff to use ordinary care and skill by failing to properly store, prepare and repair the Subject Vehicle in accordance with industry standards.

79. Defendant ROBINSON's negligent breach of its duties owed to Plaintiff was a proximate cause of Plaintiff's damages.

## PRAYER

PLAINTIFF PRAYS for judgment against Defendants as follows:

    a.    For general, special and Plaintiff's actual damages according to proof;

    b.    For restitution;

    c.    Plaintiff's any consequential and incidental damages;

    d.    For revocation of acceptance of the Subject Vehicle, reimbursement and/or restitution of all monies expended;

    e.    For diminution in value;

    f.    For a civil penalty in the amount of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (c) or (e);

    g.    For prejudgment interest at the legal rate;

    h.    For costs of the suit and Plaintiff's reasonable attorneys' fees pursuant to Civil Code section 1794, subdivision (d);

    i.    For punitive damages;

    j.    For such other relief as the Court may deem proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action asserted herein.

Dated: June 23, 2022                    STRATEGIC LEGAL PRACTICES, APC

                                        By    _____
                                               TIONNA G. DOLIN Attorney for Plaintiff LORNE CURRIE